**IN THE COURT OF APPEALS OF IOWA**

No. 24-1144
Filed January 9, 2025

**IN THE INTEREST OF A.H. and J.H.,**
**Minor Children,**

**T.H., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon,

Judge.

A mother appeals the termination of her parental rights to two children.

**AFFIRMED.**

Ricki L. Osborn Stubbs of Osborn Stubbs Law Office, P.C., Fort Dodge, for

appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, attorney

and guardian ad litem for minor children.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

The mother appeals the termination of her parental rights to two children: A.H. (born 2019) and J.H. (born 2017). The children have separate fathers, both of whose rights were terminated and neither of whom appeal. On review, we affirm that termination of the mother's rights is in the children's best interests, no permissive exception precludes termination, and an additional six months' time for reunification was not warranted.

**Background Facts and Proceedings.** This family came to the attention of the Iowa Department of Health and Human Services (HHS) in May 2022 after the mother essentially abandoned the children with a daycare provider when the mother was hospitalized. The mother had a complex mental-health and substance-abuse history involving self-harm, suicide attempts, and struggles caring for the children. She did not have an extensive support network. Under strict guidelines and with significant supporting services following her initial hospitalization, the children were placed with the mother three times—in June and September 2022 and April 2023. But each placement ended within a month or two following the mother's suicide attempt or hospitalization. The mother was in and out of treatment programs and the hospital throughout the entire life of the case— at least twenty hospitalizations over a period of twenty-four months. She was unable to attend numerous visits with the children due to hospitalizations and other placements.

The children also exhibited challenging behaviors. The older child could be "aggressive and assaultive towards himself and others at times," destroyed school property, and would take his anger out on the younger child. He was eventually

placed in a psychiatric mental health institute for children (PMIC), where he remained at the time of the termination trial. The younger child was in a foster home at the time of trial. The case worker was concerned the younger child was "having the same behaviors" as the older child and would "blow-up" after contact with him or the mother. The children were in therapy, but the family could not do parent–child interaction therapy because the mother was too unstable.

At the time of trial, the mother had been in the hospital or a recovery program for at least six weeks. She lost her apartment and vehicle, and she was unemployed. And she had some positive test results for controlled substances, though the case worker was uncertain if some of these were attributable to the mother's medications or hospital stays.

The county attorney, HHS, and the children's guardian ad litem (GAL) all recommended termination of parental rights. Through her attorney, the mother essentially agreed the statutory grounds had been met, but contested best interests, briefly urged two permissive exceptions, and asked for additional time. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2024). The mother appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Best Interests.**[1] The mother challenges whether it was in the best interests of the children to terminate her parental rights. On review, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional

---

[1] The petition on appeal conflates arguments about best interests with the request for additional time. We do our best to adequately address them separately.

condition and needs of the child[ren]." Iowa Code § 232.116(2). The juvenile court put it well: "It is not safe for [the mother] to be left alone, let alone with her children. . . . [The mother] cannot take care of herself, let alone [J.H.] and his sister." We recognize that both children have struggled in foster placements, but we cannot say that is due to separation from the mother, as their significant behavioral issues arose in at least some fashion while they were still in her care. And we credit the GAL's recommendation in favor of termination, as we agree with her assessment that termination is best for the children's long-term physical, mental, and emotional wellbeing. Given the mother's inability to consistently care for herself or the children, her constant struggle to improve her mental health and sustain sobriety, the progression of the permanency timelines in this case, and the children's need for stability, we affirm that termination of the mother's parental rights was in the children's best interests.

**Permissive Exceptions.** The mother next urges the juvenile court should have applied the permissive bond exception found in section 232.116(3)(c). To invoke this exception, the mother bears the burden to prove by "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). We agree with the juvenile court that the mother failed to carry her burden on this record. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the child's best interests). As the juvenile court explained:

> no evidence, let alone clear and convincing evidence, was presented which indicates that termination would be detrimental to the children at this time due to the closeness of any parent-child relationship.

> There is no evidence that the children will be adversely affected by the termination of their parents' parental rights. . . . Although the children are arguably bonded with their mother, the short-term distress that will accompany termination of her rights is dwarfed by the long-term benefits [that accompany] termination.

While the mother has sincerely expressed she loves her children, and we believe her, that is not enough to avoid termination. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). We decline to apply this exception.

The mother also urges the juvenile court should have considered the permissive exception at section 232.116(3)(d), based on J.H.'s placement in PMIC. *See* Iowa Code § 232.116(3)(d) (allowing the court to thwart termination if "[i]t is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child"). Assuming without deciding this issue was adequately preserved, we cannot say we disagree with the juvenile court declining to thwart termination related to J.H. on this basis. Although the mother's continued relationship will not prevent J.H.'s "permanent family placement" in the immediate future due to his indefinite placement at PMIC, the exception is permissive and the reasons we have expressed elsewhere in this opinion all tilt convincingly toward termination. *See In re M.H.*, No. 14-0884, 2014 WL 4635462, at *3 (Iowa Ct. App. Sept. 17, 2014) (declining to apply the exception); *In re L.R.*, No. 19-1116, 2019 WL 4678227, at *2 (Iowa Ct. App. Sept. 25, 2019) (same).

**Additional Time.** The mother also argues she should have received an additional six months' time to work toward reunification. "[T]he juvenile court may deny termination and give the parent an additional six months for reunification only

if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). And the parent bears the burden to make that showing. *Id.* at 322–24.

On our de novo review, we agree with the juvenile court the mother "is nowhere close to being in a position to resume care of her children." There is little reason to believe the mother will achieve the "monumental tasks" of resolving her chronic and severe mental-health, self-harm, and substance-abuse problems in the next six months. And even if she did, she would still require additional time to develop adequate parenting skills, obtain housing and transportation, and otherwise prepare to resume care of the children.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). And that is what we would have to do to grant the mother relief here. Considering the children's desperate need for stability, bare hope that the mother's mental health improves and her sobriety persists is not a sufficient basis for delaying permanency. *See id.*

**AFFIRMED.**